UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

KAYE ELIZABETH SANDFORD,

                                            No. 11-10-14424 TS

    Debtor.

## MEMORANDUM OPINION ON U.S. BANK'S MOTION FOR SUMMARY JUDGMENT RESOLVING CLAIM OBJECTION

The debtor Kaye Elizabeth Sandford objected to U.S. Bank's[1] secured claim in this Chapter 11 case, which claim is based on a promissory note secured by a mortgage on Debtor's house. After Debtor signed the note and mortgage, the loan documents were transferred to a securitized mortgage loan pool. Debtor's main argument is that her loan documents were transferred in violation of the applicable pooling and servicing agreement ("PSA") between the loan pool trustee and the loan seller.

The Court agrees with the "judicial consensus"[2] on this issue and rules that Debtor does not have standing to assert alleged violations of the PSA. The Court also overrules Debtor's other, related arguments in support of the claim objection.

This is a core matter. *See* 28 U.S.C. § 157(b)(2)(B)(core matters include the allowance or disallowance of claims against the estate). The Court has considered the briefs and supporting

---

[1] The creditor's full name is U.S. Bank National Association, as trustee on behalf of the LXH 2006-2N Trust Fund.
[2] *See In re Walker,* 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) (observing "that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement") (collecting cases).

papers of the parties, and has made an independent inquiry into applicable case law. Being sufficiently advised, the Court issues the following Memorandum Opinion.

## I. FACTS

The Court finds that the following facts are not in material dispute:

1. In response to written discovery requests, U.S. Bank produced an unsigned copy of a certain Flow Seller's Warranties and Servicing Agreement (the "SWSA") dated as of June 1, 2004, between Lehman Bank ("Lehman") and Countrywide Home Loans, Inc. ("Countrywide"). Apparently no executed copy can be located.[3]

2. On August 22, 2005, Debtor signed an Adjustable Rate Note payable to RBC Mortgage Company ("RBC"), evidencing a debt to RBC in the principal sum of $862,500 (the "Note").

3. The Note was indorsed from RBC to Countrywide Bank, N.A. ("CBNA"), then by CBNA to Countrywide, and then by Countrywide in blank.[4] None of the indorsements is dated.

4. As security for the Note, Debtor executed a mortgage dated August 22, 2005 (the "Mortgage"), encumbering the following property in Santa Fe County, New Mexico:

> Lots 20 and 21 of Ranchitos de Galisteo subdivision, as shown on Plat filed in the office of the County Clerk, Santa Fe County, New Mexico, on July 30 1979, in Plat Book 71, Page 1, as Document No. 443,238,

---

[3]*See* Debtor's Response in Opposition to U.S. Bank's Amended Motion for Summary Judgment Overruling Debtor's Objection to Claim # 7 ("Response"), p. 9. (Docket No. 248).
[4]Debtor asserts that RBC did not indorse the Note to CBNA. Response, p. 22. That is incorrect. Debtor included a copy of the Note as Exhibit B to the Response, and U.S. Bank included a copy of the Note as Exhibit A to its Memorandum in Support of Motion for Summary Judgment Overruling Debtor's Objection to Claim # 7. *See* Docket Nos. 249-3 and 227-2. Both copies of the Note are the same and reflect an indorsement by RBC to CBNA.

(the "Property").

5. The Mortgage named Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee, "solely as the nominee for [RBC] and [RBC's] successors and assigns."[5]

6. In response to written discovery requests, U.S. Bank produced an unsigned copy of a certain Reconstituted Servicing Agreement dated as of January 1, 2006 (the "RSA"), between U.S. Bank, Lehman, Countrywide, and others. Apparently no signed copy can be located.[6]

7. The RSA refers to a trust agreement dated as of January 1, 2006, but no copy of such an agreement, signed or unsigned, is before the Court.

8. Debtor is not a party to the PSA.

9. U.S. Bank is the named assignee in the Assignment of Mortgage recorded with the Santa Fe County Clerk on September 2, 2009 and re-recorded February 9, 2010 (the "Mortgage Assignment").

10. The Mortgage Assignment was executed by Mary Kist, a Vice President of MERS.

11. U.S. Bank is in possession of the original Note, the original Mortgage, and the original Mortgage Assignment.

12. Debtor filed this bankruptcy case on August 30, 210.

---

[5] When the loan was made Debtor signed a document titled "Disclosure Statement About MERS," which explained MERS' role as nominee in the transaction. *See* Docket No. 249-10, p. 19.
[6] *See* Response, p. 9. The RSA incorporates by reference parts of the SWSA. The Court sometimes will refer to the RSA and the SWSA together as the "PSA" because that is the common acronym for such documents.

-3-

13. U.S. Bank filed its proof of claim in this case on December 21, 2010 as claim No. 7-1 (the "Proof of Claim").

14. Debtor objected to the Proof of Claim on March 3, 2011, doc. 87, and amended her objection April 13, 2011, doc. 89 (the "Objection"). The sole basis for the Objection is that the subject loan documents were "invalidly assigned" to U.S. Bank.[7]

15. U.S. Bank filed its Amended Motion for Summary Judgment Overruling Debtor's Objection to Claim #7 (the "Motion") on August 1, 2012. *See* Docket No. 236. Debtor filed the Response on August 22, 2012. *See* Docket No. 248.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d (1986). In determining whether summary judgment should be granted, the Court will view the record in

---

[7]In the Response, Debtor questions for the first time the claim amount. Because Debtor did not raise this issue in the Objection, but only U.S. Bank's right to enforce the claim, the Court will not consider Debtor's argument that the claim amount is incorrect. *See, e.g., Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 323 (1st Cir. B.A.P. 2011)("it is unfair to permit a plaintiff's eleventh hour amendment of a complaint on the eve of summary judgment")(citing *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 589-90 (1st Cir. 2007)).

-4-

the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. B.A.P. 1997).

The party opposing a motion for summary judgment "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990)(citing *Celotex Corp. v. Catrett,* 477 U.S. at 324). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) (same); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr.D.N.M. 2008)(same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249 (internal citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the

-5-

non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### III. DISCUSSION

Debtor advances three arguments that U.S. Bank's Proof of Claim should be disallowed. They will be addressed in turn.

A. <u>Negotiation of the Note</u>. Debtor argues that U.S. Bank cannot enforce the Note and Mortgage because Countrywide did not comply with the PSA when it transferred the Note and Mortgage into the loan pool. Response, p. 19-24. Debtor argues the Note was never "validly delivered" to U.S. Bank, so U.S. Bank may not enforce it. Response, p. 22. This argument fails.[8]

First, there is no dispute that U.S. Bank is in possession of the original Note and that the Note is indorsed in blank. Consequently, U.S. Bank is the holder of the Note and is entitled to enforce it. *See Bank of America v. Quintana*, 2012 WL 1252723, at *2 (N.M. Ct. App. Mar. 12, 2012) (rejecting borrower's argument that mere possession is insufficient to give the bank the right to enforce the note, stating that "[b]ecause Bank had possession of the note, Bank was the holder of the note[,]" and could enforce it, citing N.M.S.A. 1978 § 55-3-301). This perhaps should end the discussion.

---

[8] One weakness in Debtor's argument is that the PSA documents Debtor relies upon are unsigned by any of the parties named in the PSA documents. There is no evidence before the Court that Countrywide, Lehmann, or U.S. Bank was bound by the PSA. However, the Court will address Debtor's arguments as though the PSA and the trust agreement were validly executed and are binding on all parties named in the PSA.

Furthermore, case law is both uniform and abundant (*Walker's* "judicial consensus")[9] that a borrower lacks standing to challenge the validity of a loan assignment based on alleged noncompliance with a PSA, because the borrower is neither a party to the PSA nor a third party beneficiary. *See Bateman v. Countrywide Home Loans*, 2012 WL 5593228, *4 (D. Haw. Nov. 14, 2012) ("borrowers generally lack standing to challenge the assignments of their loans"); *Metcalf v. Deutsche Bank Nat'l Trust Co.,* 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012); *Lindsay v. America's Wholesale Lender*, 2012 WL 83475, at *3 (C.D. Cal. Jan. 10, 2012); *Bascos v. Federal Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011); *Wittenberg v. First Independent Mortgage Co.*, 2011 WL 1357483, at *21 (N.D.W. Va. 2011); *Velasco v. Security Nat'l Mortg. Co.*, 823 F. Supp. 2d 1061, 1071 (D. Haw. 2011); *Wolf v. Fed. Nat'l Mortg. Assn.,* 830 F. Supp. 2d 153, 161 (W.D. Va. 2011); *Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 735 (E.D. Mich. 2010), *aff'd*, 399 Fed. Appx. 97 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1696 (2011); *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010); *Correia*, 452 B.R. at 324 (affirming bankruptcy court's determination that the "debtors lacked standing to challenge the mortgage's chain of title under the PSA."); *Washington v. Saxon Mortg. Services (In re Washington)*, 469 B.R. 587, 590 (Bankr. W.D. Pa. 2012); *In re Wright*, 2012 WL 27500, at *3 (Bankr. D. Haw. Jan. 5, 2012); *Kain v. Bank of New York Mellon (In re Kain)*, 2012 WL 1098465, at *8 (Bankr. D.S.C. Mar. 30, 2012); *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, 2011 WL 6754073, at *3 (Bankr. E.D. Wis. Dec. 23, 2011); *In re Smoak*, 461 B.R.

---

[9] 466 B.R. at 285.

510, 519 (Bankr. S.D. Ohio 2011); *Washington v. Deutsche Bank Nat'l Trust Co. (In re Washington)*, 468 B.R. 846, 853 (Bankr. W.D. Mo. 2011), *aff'd*, 2012 WL 4483798 (W.D. Mo. Sept. 28, 2012); *In re Almeida*, 417 B.R. 140, 149, n. 4 (Bankr. D. Mass. 2009). The Court agrees with the reasoning of these decisions and will follow them.

This result does not expose Debtor to the risk of double liability if she makes a payment to U.S. Bank. *See Walker,* 466 B.R. at 286 (stating "even if the assignment . . . were defective and the original assignor retains ownership rights in the Note, any payments the Debtor makes to [the note holder] will discharge her liability under the Note[]" and concluding that under the applicable UCC statute, "the Debtor is in no danger of being subjected to double liability."); *Kain,* 2012 WL 1098465 at *8 n. 33 (pointing out that under S.C.Code Ann. § 36-3-603(1), "any payments the Plaintiffs would have made to Claimant would discharge their liability under the Note" even if it turned out that the assignment of the Note was defective). Under § 3-602 of the New Mexico Uniform Commercial Code ("UCC"), Debtor will be credited for all payments she made to U.S. Bank in the unlikely event that it later turns out that U.S. Bank's enforcement of the Note breaches an obligation to a third party.[10]

Further, even if the Court were to assume for the sake of argument that Debtor has standing and that Countrywide did not comply with the PSA when it transferred the Note and

---

[10]*See* N.M.S.A. § 55-3-602(a) (" . . . an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged, even though payment is made with knowledge of a claim to the instrument under Section 55-3-306 NMSA 1978 by another person.").

-8-

Mortgage,[11] it does not follow that U.S. Bank does not hold the Note or own the Mortgage. Rather, if Countrywide breached the PSA with this or any other loan, U.S. Bank has contract breach remedies *in addition to* ownership of the loans. *See* SWSA, p.32, § 3.03 (Docket No. 249-20) and RSA, p. 27 (Docket No. 249-19). The alleged breaches would not void the transfer of the loans. *See, e.g.*, *Metcalf v. Deutsche Bank*, 2012 WL 2399369 at *4 (finding that it is unclear that assignment would be invalid merely because it allegedly conflicted with the PSA).

Debtor next argues that New York[12] trust law requires a finding that the subject trust never took valid delivery of the loan documents, due to Countrywide's alleged failure to comply with the PSA. Response, pp. 20-24. Even apart from the dispositive standing problem discussed above, this argument is not persuasive. The New York trust law Debtor cites deals with cases where delivery of potential trust *res* never occurred. *See, e.g., Matter of Szabo,* 10 N.Y.2d 94 (Ct. App. 1961); *Gruen v. Gruen,* 68 N.Y.2d 48, 56-57 (Ct. App. 1986); *Beaver v. Beaver,* 117 N.Y. 421 (Ct. App. 1889)*.* Here, the Note and Mortgage were clearly delivered to U.S. Bank – U.S. Bank possesses the original Note and the original Mortgage. If Countrywide's delivery fell short in any way under the PSA (a fact that is far from clear), the result would be a claim for breach of contract, not the failure of the intended delivery. The Court finds that Debtor did not raise a fact issue on ownership of the loan documents based on its New York trust law arguments.

---

[11]It is not clear there was a breach of contract when Countrywide sold the loan. The main evidence Debtor points to is the chain of indorsements on the Note. As set forth above, the chain appears complete, and the indorsements appear to comply with the terms of the PSA.

[12]It is not clear that New York law applies, since the trust agreement is not available. Both the SWSA and the RSA provide that New York law applies. The Note and Mortgage, on the other hand, provide that New Mexico law governs. In any event, it does not make a difference to the outcome of this contested matter whether New York or New Mexico state law applies.

-9-

B.      Assignment of Mortgage.  Debtor also argues that there are fact issues concerning the validity of the Mortgage Assignment.  The argument is without merit.  There is no genuine dispute that the Mortgage Assignment was executed by Mary Kist, that Ms. Kist was an officer of MERS when she executed the Mortgage Assignment on MERS' behalf,[13] or that the assignment was recorded in the Santa Fe County real estate records.[14]  The Mortgage Assignment properly identifies the mortgagor (Debtor), mortgagee (MERS), and assignee (U.S. Bank).  The Mortgage Assignment properly identifies the Mortgage by date and document number, and the Property by legal description.

The Mortgage plainly states that MERS is authorized to assign its interest as mortgagee to a third party.  Mortgage, p. 3.  MERS has the ability to assign its rights under mortgages and deeds of trust.  *See, e.g., Bank of America v. Quintana,* 2012 WL 1252723, at *3-6 (MERS mortgage assignment valid and enforceable); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) (pointing out that the language in the deed of trust clearly describes MERS' role in the loan and that, "[b]y signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents"); *In re Mortgage Electronic Registration*

---

[13] The Court acknowledges that MERS' corporate structure is strange and subject to legitimate question. *See, e.g.,* the discussion of MERS in *Culhane v. Aurora Loan Services of Nebraska*, 826 F. Supp. 2d 352, 368 (D. Mass. 2011).  Despite that, the case law, including a recent New Mexico Court of Appeals decision, is nearly uniform that MERS' mortgage assignments such as the one challenged here are valid.  *See Bank of America v. Quintana,* 2012 WL 1252723 (N.M. App. 2012).

[14] Debtor asserts there is evidence the Mortgage Assignment was forged or tampered with.  *See* Response, p. 15. Debtor points to the pasted-on legal description in the Mortgage Assignment.  However, the Mortgage Assignment clearly states that it was re-recorded to correct the legal description, and it is apparent that the corrected legal description was placed on the document after the first recording.  This explains the matters Debtor complains of. The fact that the corrected legal description matches the Mortgage reinforces this conclusion, as does the fact that the Mortgage Assignment correctly identifies the date and document number of the original mortgage.  Other than the appearance of the Mortgage Assignment itself, Debtor does not assert any factual basis for her allegation of forgery. The Debtor has offered insufficient evidence of forgery to raise a genuine issue of material fact regarding the validity of the Mortgage Assignment.

-10-

*Systems (MERS) Litigation*, 2012 WL 1931365 (D. Ariz. May 25, 2012); *Sheppard v. BAC Home Loans Servicing, LP*, 2012 WL 204288 (W.D. Va. Jan 24, 2012); *Bhatti v. Guild Mortg. Co.*, 2011 WL 6300229, at *4-5 (W.D. Wash. Dec. 16, 2011); *Zinni v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 5827197, at *2 (D. Nev. Nov. 18, 2011); *Larota-Florez v. Goldman Sachs Mortg. Co.,* 719 F. Supp. 2d 636 (E.D. Va. 2010), *aff'd*, 441 Fed.Appx. 202 (4th Cir. 2011); *Culhane v. Aurora Loan Services,* 826 F. Supp. 2d 352, 371 (D. Mass. 2011) ("The prevailing view in Massachusetts is that MERS has the power of assignment by virtue of its nominee status.") (citations omitted). In short, the current case law overwhelmingly rejects the argument that MERS lacks authority to assign its interest in a mortgage.

Furthermore, the general rule in New Mexico and elsewhere is that a mortgage "follows" the promissory note it secures, so that a subsequent holder of the note can enforce the mortgage even without a formal assignment thereof. *See, e.g., Medler v. Childers*, 17 N.M. 530, 531, 131 P. 490, 491 (1913) (the indorsee of the promissory note is entitled to the benefits of such mortgage, whether an assignment of the same is made or not); *Simson v. Bilderbeck, Inc.*, 76 N.M. 667, 669, 417 P.2d 803, 805 (1966) ("'It has frequently been held that a mortgage is but an incident to the debt, the payment of which it secured, and its ownership follows the assignment of the debt'") (quoting 2 Jones, Mortgages § 1033 (8th ed.)). *See also In re Martinez*, 2011 WL 996705, at *4 (Bankr. D. Wyo. Mar. 16, 2011) ("the long standing premise is that the mortgage follows the note . . . . 'the debt is the principal thing and the mortgage an accessory.'") (quoting *Carpenter v. Longan*, 83 U.S. 271 (1872)); *Smoak*, 461 B.R. at 519; *Wright*, 2012 WL 27500 at *3 (under common law, the mortgage was automatically transferred with the underlying note);

*Edwards,* 2011 WL 6754073, at *7 (same). *See generally, Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn. App. 830, 848, 812 A.2d 51, 63 (2002)("It is hornbook law that the mortgage follows the note") (citation and internal quotation marks omitted).

It is undisputed that U.S. Bank is in possession of the original Note and is the named assignee in the Mortgage Assignment. The Mortgage refers specifically to the Note. Mortgage, p. 2. The Court, therefore, finds that there is no genuine issue that the Assignment of Mortgage is valid and that U.S. Bank is the current owner of the Mortgage.

C. <u>The PSA did not Supersede the UCC</u>. Finally, Debtor argues that the PSA superseded U.S. Bank's rights under the UCC. *See* Debtor's Sur-Reply, filed September 27, 2012 (Docket No. 271). This argument also fails. First, as determined above, Debtor lacks standing to make this argument because Debtor is not a party to the PSA, nor is she a third-party beneficiary of the PSA. Second, the PSA makes no mention of the UCC, nor does it state or imply that the protections granted to the purchaser under the PSA replace, rather than augment, U.S. Bank's UCC rights. It would be strange indeed if the PSA, a document obviously drafted to protect the loan purchaser, instead eviscerated fundamental UCC rights and made the loan worthless.

Furthermore, the essential rights U.S. Bank relies upon, *i.e.,* the right to enforce a promissory note as the holder of the original note indorsed in blank, cannot be varied by contract. *See Smoak*, 461 B.R. at 521 (holding that a PSA "could not vary the essential rules and terminology of the transfer of negotiable instruments, and citing Official Comment 2 to UCC 1-102); *In re Walker*, 466 B.R. at 284 (agreeing with and citing *Smoak).*

-12-

## IV. CONCLUSION

Because the SWSA and RSA are unsigned and the subject trust agreement is not in evidence, the only facts not in dispute are that U.S. Bank is in possession of the original Note, indorsed in blank, and is the named assignee of the Mortgage. These facts by themselves are sufficient to overrule Debtor's objection to U.S. Bank's claim. As determined above, by virtue of its possession of the indorsed Note, U.S. Bank is the holder of the Note, and because the Mortgage follows the Note, U.S. Bank is entitled to enforce both. Everything else is speculative, given the weak nature of the documentary evidence. Even if the original, signed PSA and trust documents were before the Court, the result would be the same for the reasons set out above.

Based on the foregoing, the Court will grant the Motion, and U.S. Bank's Proof of Claim will be allowed as filed. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate order will be entered.

_____
DAVID T. THUMA
United States Bankruptcy Judge

Entered on the docket: December 3, 2012.

Copies to:

Edward A. Mazel
201 Third Street NW, Suite 505
Albuquerque, NM 87102

LeNatria H. Jurist
20 First Plaza NW, Suite 602
Albuquerque, NM 87102