UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KAYE ELIZABETH SANDFORD,

                                                                   No. 11-10-14424 TS

      Debtor.

## MEMORANDUM OPINION

The Debtor has asked the Court to modify her Third Amended Chapter 11 Plan of Reorganization to give her until December 31, 2013 to sell her assets and pay creditors.[1] Three secured creditors objected.[2] This is a core matter. The Court has considered the briefs and supporting papers of the parties, has heard the testimony of witnesses at a final hearing, and has considered the arguments of counsel. Being sufficiently advised, the Court finds that the Motion is not well taken and should be denied.

### I.    FACTS

The Court finds the following facts:

1.     Debtor filed this bankruptcy case on August 30, 2010.

2.     Debtor has been trying to sell the real property commonly known as the Vista Clara Resort and Spa and the Flying M Ranch (together, the "Property") since before the petition date.

---

[1] Emergency Motion to Modify Debtor's Third Amended Chapter 11 Plan of Reorganization to Enlarge Time Under Certain Provisions for Cause, filed July 19, 2013, doc. 310 (the "Motion").
[2] Sterling Bank, doc. 322; U.S. Bank, doc. 329; and Los Alamos National Bank, doc. 316.

3. Debtor filed her First Amended Plan of Reorganization on February 10, 2012 (the "First Plan").

4. Los Alamos National Bank ("LANB"), JPMorgan Chase Bank ("JPMorgan"), and US Bank N.A. ("U.S. Bank") objected to the First Plan.

5. To resolve the objections, Debtor filed her Second Amended Chapter 11 Plan of Reorganization on June 5, 2012 (the "Second Plan").

6. At the confirmation hearing on the Second Plan, LANB, US Bank, and JPMorgan, (together, the "Secured Lenders") consented to confirmation of the plan with certain modifications.

7. These modifications, together with certain additional modifications required by the Court, are reflected in the Third Amended Chapter 11 Plan of Reorganization, filed June 18, 2012, doc. 217 (the "Third Plan").

8. As reflected in the Third Plan, The Secured Lenders agreed to forego monthly adequate protection or other payments, and for Debtor to have 14 months after confirmation to sell the Property. In exchange, Debtor agreed *inter alia* to the inclusion of the following language in the treatment of each Secured Lender's claim:

> Mandatory Conversion. If on or before August 15, 2013, the Debtor does not close and fund the sale of the [Property], or as much of the [Property] as may be sufficient to pay _____ Allowed Secured Claim in full, the Debtor's bankruptcy case shall be converted to a case under Chapter 7 of the United States Bankruptcy Code. In such event, Debtor shall cause an order converting this case to chapter 7 to be submitted to the Court for entry on or before August 21, 2013.

9.      The mandatory conversion language appears, with slight variations depending on the secured creditor, four times in the Third Plan. In addition, the following language appears in paragraph 5.4 of the Third Plan, which was not in the Debtor's Second Plan:

> <u>Conversion</u>.  Notwithstanding anything herein to the contrary, if by August 15, 2013, the Debtor has not (i) closed and funded the sale of the Vista Clara Portion and/or the Ranchitos Property, or so much of the aforementioned properties to fully repay US BANK N.A., Sterling, LANB and JPMorgan, or (ii) paid U.S. Bank N.A., Sterling, LANB, and JPMorgan the full amount of their Allowed Claims, the case will be converted to Chapter 7 as provided herein.

10.     The Secured Lenders agreed to the Third Plan in reliance on Debtor's agreement to convert the case in August, 2013, if she had not completed and funded a sale of the Property sufficient to pay them in full.

11.     By the Motion, the Debtor seeks to extend until December 31, 2013 the time she has to complete and fund the sale of her Property, which means that she wishes to delay payment to the Secured Lenders, and delay or avoid the conversion of her case to Chapter 7.

12.     At the final hearing, the Debtor introduced into evidence a Letter of Intent signed by the Debtor and Gaaruda LLC (the "LOI"), in support of her argument that if the Court grants her Motion, she will be able to sell the Property by the extended deadline.

13.     The Secured Lenders expressed concern about Gaaruda's financial ability to purchase the Property. No evidence of such ability was tendered.

-3-

14. The Debtor also had her current broker, Tommy Gardner of Sotheby's International Realty/Santa Fe Commercial Realty), testify about his efforts to sell the Property. Mr. Gardner testified that he thought the market has improved recently, and he is optimistic that a buyer can be found in the near future, although he had no offers in hand as of August 15, 2013.

15. Debtor has three general unsecured creditors: Virginia Sandford (Debtor's mother), $40,000; Ferrell Gas, $2,920.29; and Bank of America, $47,126.63 (credit card debt). None voted on any plan.

## II. DISCUSSION

A. Relevant Law.

1. Section 1127(e). The Motion is brought under 11 U.S.C. § 1127(e)(2), which provides:

> If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—
> …
> (2) extend or reduce the time period for such payments;
> …

Section 1127(e) was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005("BAPCPA"). It mirrors the post-confirmation modification provisions of Chapter 12, 11 U.S.C. § 1229(a), and Chapter 13, 11 U.S.C. §

-4-

1329(a)(2), even to the point of providing that the "trustee" may seek to modify an individual's chapter 11 plan post-confirmation, an unlikely scenario.

        2.     <u>The Standard for Determining Motions under § 1127(e)</u>. There is a split in the case law about the standard for analyzing motions to amend confirmed plans under §§ 1127(e), 1229(a), and/or 1329(a).[3] The majority of courts have held that granting or denying motions to modify confirmed plans under these subsections[4] is within the bankruptcy court's sound discretion. *See, e.g., In re Meza,* 467 F.3d 874, 877-78 (5th Cir. 2006); *In re Witkowski,* 16 F.3d 739, 748 (7th Cir. 1994); *Barbosa v. Solomon,* 235 F.3d 31, 41 (1st Cir. 2000); *In re Brown,* 219 B.R. 191, 192 (6th Cir. BAP 1998) (modification under § 1329 is discretionary); *In re Mattson,* 468 B.R. 361, 367 (9th Cir. BAP 2012); *In re Mallari,* 2012 WL 4855180, at *6 (E.D. Mich. 2012); *In re Riddle*, 410 B.R. 460 (Bankr. N.D. Tex 2009). *See also In re Self*, 2009 WL 2969489, at *4 (Bankr. D. Kan. 2009) (while not ruling specifically on the issue, Judge Karlin seemed to support the "sound discretion" modification standard).

In contrast, the Fourth Circuit Court of Appeals requires the movant to show a substantial, unanticipated change in the debtor's financial condition. *In re Murphy,* 474 F.3d 143 (4th Cir. 2007). Other courts have agreed. *See, e.g., In re Zamora*, 2008 WL 752456, at *3 (Bankr. D.N.M. 2008) (Starzynski, J.); *In re McCray*, 172 B.R. 154, 158 (Bankr. S.D. Ga. 1994); *In re Wilson,* 157 B.R. 389, 390-92 (Bankr. S.D. Ohio 1993); *In*

---

[3] These subsections are substantially identical. Section 1329(a) contains a fourth type of permissible modification, relating to health insurance costs.

[4] The Court cites case law on §§ 1229(a) and 1329(a) because there are so few cases construing § 1127(e).

-5-

*re Woodhouse,* 119 B.R. 819, 820 (Bankr. M.D. Ala. 1990); *In re Fitak,* 92 B.R. 243 (Bankr. S.D. Ohio 1988), *affirmed*, 121 B.R. 224 (S.D. Ohio 1990). For the most part, these courts reason that confirmation of a plan is *res judicata*, and therefore should not be lightly disturbed. *McCray,* 172 B.R. at 158, citing *Woodhouse.* Some of the cases also conclude that the "substantial, unanticipated change" standard can be deduced from legislative history. The Tenth Circuit has not ruled on this issue.

The Court believes that the *Witkowski* line of cases is better reasoned. The Seventh Circuit's holding that modification is within the bankruptcy court's discretion was based on two main arguments, both of which are persuasive:

    a.    The language of § 1329(a) is plain and unambiguous, and does not require proof of an unanticipated, substantial change in circumstances or financial condition. 16 F.3d at 742-44;[5] and

    b.    The common law doctrine of *res judicata* does not prevent modification of confirmed plans, because the doctrine does not apply "when a statutory purpose to the contrary is evident." 16 F.3d at 744-46.

The Court agrees with *Witkowski's* analysis of these two issues, and will follow the *Witkowski* line of authority. Thus, while the Court will consider changes to the Debtor's financial condition as a factor in ruling on the Motion, the Court will not require

---

[5] The *Witkowski* court cites to several cases that rely on legislative history to support their ruling that the movant must show a substantial, unanticipated change in financial condition, but properly dismisses these cases with the following: "Legislative history helps us learn what Congress meant by what it said, but it is not a source of legal rules competing with those found in the U.S. Code." *Witkowski,* 16 F.3d at 744, citing *Matter of Sinclair,* 870 F.2d 1340, 1344 (7th Cir. 1989).

Case 10-14424-t7    Doc 342    Filed 08/27/13    Entered 08/27/13 14:58:13 Page 6 of 11

proof of a substantial, unanticipated change of financial condition as a prerequisite to plan modification.

3. <u>Section 1127(e) Limits the Types of Modifications</u>. The three subsections of § 1127(e) are exclusive; if a proposed modification does not fall within one of the subsections, the modification cannot be allowed. *In re Plummer,* 378 B.R. 569 (Bankr. C.D. Ill. 2007), citing *In re Witkowski,* 16 F.3d 739, 745 (7th Cir. 1994).

4. <u>The General Policy Favoring Settlements</u>. There is a strong public policy favoring the enforcement of compromises and settlement agreements. *In re Pfiester,* 449 B.R. 422, 425 (Bankr. D.N.M. 2011) (Judge Starzynski), citing *Williams v. First National Bank,* 216 U.S. 582 (1910) and *Smith v. Munro,* 134 Vt. 417, 365 A2.d 259 (1976); *In re Phillps,* 483 B.R. 254, 261 (M.D. Fla. 2012) (citing *In re Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996), the court stated that "public policy . . . favors enforcement of settlement agreement and providing relief to the creditors who have been waiting for years to receive relief"). The policy of enforcing settlement agreements is tempered where doing so might adversely affect third party creditors who did not have notice of, and a chance to object to, the agreement. *See, e.g., Farm Credit of Central Florida, ACA v. Polk,* 160 B.R. 870, 873 (M.D. Fla. 1993).

B. <u>The Facts in This Case do Not Favor Modification</u>. Applying the legal principles outlined above to the facts, it is clear that the proposed modification should not be approved. First, granting the Motion would upset the settlement agreement reached

-7-

among the Debtor and the Secured Lenders. This should not be done absent fairly compelling circumstances, as the proposed modification would reduce the Secured Lenders' benefit of their bargain. The Secured Lenders have waited (at least) 14 months without a payment, and have given the Debtor the unfettered right to market and sell the Property. In exchange, the Debtor agreed to convert the case if she did not complete a sale by August 15, 2013. It would not be fair to extend this deadline over the objection of the Secured Lenders.

Second, denying the motion would not substantially harm third parties. Debtor's disclosure statement lists three general unsecured creditors: Virginia Sandford (Debtor's mother), $40,000; Ferrell Gas, $2,920.29; and Bank of America, $47,126.63. Compared with these claims, which total about $90,000, the disclosure statement shows secured claims of about $3,500,000. Furthermore, the unsecured creditors had the opportunity to appear and participate in the bankruptcy case, so they could have objected to the August 15, 2013 "drop dead" date had they wanted to.

Third, the evidence of an imminent sale is weak. The LOI does not support Debtor's argument that the requested extension would result in a closed sale of the Property for $4,000,000. It could happen, but the likelihood of such a favorable result is unknown. Viewed impartially, it appears that the most likely outcome from the LOI is a possible sale, at an unknown price of $4,000,000 or (probably) less, which may well

would close, if ever, after December 31, 2013.[6]

The Court's concern about the seriousness of the LOI and other hoped-for offers is underlined by the various statements made by the Debtor to the Secured Lenders during the course of marketing the Property. The Debtor provided the Secured Lenders with a number of "Marketing Summaries." In each one, the description of the marketing efforts and status might lead one to believe that a sale, or at least a binding purchase offer, was shortly to arrive. Nothing ever materialized, despite all of the described "strong interest." This history leads one to wonder whether the marketing efforts described in the Motion[7] and by Mr. Gardner, together with the LOI, aren't more of the same.

Fourth, there is not much evidence that Debtor's financial condition has changed. Debtor's broker, Mr. Gardner, testified that there has been a recent improvement in the Santa Fe area commercial real estate market. This could be considered a change in Debtor's financial condition. It is not clear how substantial a change it is, however, and the change probably could not be characterized as unanticipated. The apparent lack of a substantial, unanticipated change weighs against Debtor's efforts to modify her plan.

---

[6] The Court held a post-hearing status conference on August 27, 2013, at which hearing Debtor's counsel informed the Court and the Secured Lenders that Debtor had received a verbal offer from Gaaruda LLC to purchase the Property, to close by December 31, 2013. No purchase agreement had yet been drafted, negotiated, or signed. At the time of the hearing, Debtor was preparing a counteroffer. Debtor had also received a nonbinding letter of intent from another potential buyer.

[7] The July 19, 2013 Motion states "As a result of Debtor's and her brokers' best efforts, Debtor is in advanced negotiations with several potential purchaser for the sale of the Property, and anticipates that several offer will be formally made within the next week or so." As of the August 15, 2013 hearing, the only evidence of a "formal offer" was the LOI, which states at least four times that it is nonbinding.

Finally, the Secured Lenders argue that the Debtor's inability to complete a sale before now may be due to the price at which the Property has been offered. A Chapter 7 trustee, they argue, may have more success selling the Property because he or she may be willing to list the Property for less. While there is no way to know whether Debtor would have been able to complete a sale before now if she had lowered the listing price sooner and/or more, it certainly is possible. It may be better for all creditors, including general unsecured creditors, to have a neutral trustee in control of the sales process.

The Court sympathizes with the Debtor and her struggle to sell her real estate, pay the secured creditors, and (hopefully) retain at least some excess for herself. The Debtor has been trying to achieve this end for years, but has been unable to find a buyer for the Property willing to pay a price she finds acceptable. Unfortunately, the deadline she committed to has come and gone, and no sale has been completed. All things considered, she should be held to the bargain she negotiated.

### III. CONCLUSION

If the evidence indicated that a Property sale closing truly were imminent, then the Court likely would have grant the Debtor some relief, despite the agreed-upon August 15, 2013 conversion date, under a "no harm, no foul" theory. The Motion, LOI, and hearing testimony, however, do not convince the Court that a closing can reasonably be counted on in the near future. Thus, the Secured Lenders' right to the benefit of their bargain outweighs the Debtor's reasonable desire for a little more time to find a buyer and close a sale.

-10-

The Motion must be denied.

　　　　　　　　　　　　　　　　/s/ David T. Thuma
　　　　　　　　　　　　　　　　Hon. David T. Thuma,
　　　　　　　　　　　　　　　　United States Bankruptcy Judge

Entered on the docket: August 27, 2013.

Copies to:

William Arland
201 Third Street, NW, Suite 505
Albuquerque, NM 87102

James Jurgens
100 La Salle Circle, Suite A
Santa Fe, NM 87505

Barry Williams
4811-A Hardware Dr., NE, Suite 4
Albuquerque, NM 87109

Richard M. Leverick
5120 San Francisco NE
Albuquerque, NM 87109